**ALASKA SEABOARD PARTNERS LIMITED PARTNERSHIP,**
Appellant–Plaintiff,

v.

**Gerald G. HOOD, Hendricks County Bank and Trust Co., Michael McDonald, Sheila McDonald, Normand Boutot, Linda Boutot, and Unknown Occupants of 180 North County Road 450 East, Avon, Indiana 46123, Appellees–Defendants.**

No. 32A01–1010–MF–546.

Court of Appeals of Indiana.

May 26, 2011.

John M. Mead, Leeuw Oberlies & Campbell, P.C., Indianapolis, IN, Attorney for Appellant.

William E. Kelley, Jr., Russell M. Webb, III, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Attorneys for Appellee Hendricks County Bank and Trust Company.

Scott J. Fandre, Wendy K. Walker–Dyes, Baker & Daniels LLP, South Bend, IN, Attorneys for Appellees Michael McDonald and Sheila McDonald.

April O. Davis, Plunkett Cooney, P.C., Columbus, OH, Mary A. Slade, Nathan T. Danielson, Plunkett Cooney, P.C., Indianapolis, IN, Attorneys for Appellees Normand Boutot and Linda Boutot.

## OPINION

VAIDIK, Judge.

### Case Summary

Saint Ivan Equity Management Corporation, a California corporation, assigned a mortgage on real estate in Avon, Indiana, to SNGC, LLC, a related company of Alas-

ka Seaboard Partners Limited Partnership. Saint Ivan then assigned the same mortgage to Hendricks County Bank and Trust Company. Hendricks County Bank released the mortgage and deeded the real estate to Michael and Sheila McDonald, who later deeded the real estate to Normand and Linda Boutot.

SNGC filed a lawsuit in Orange County, California, alleging, among other things, that Saint Ivan improperly assigned the mortgage to Hendricks County Bank after it had already assigned it to SNGC and should not have received the $107,600 paid by Hendricks County Bank for the mortgage it no longer owned. As a result of that lawsuit, SNGC received a monetary judgment against Saint Ivan.

Alaska Seaboard, who had since been assigned the mortgage once owned by SNGC, then filed suit in Hendricks Superior Court to foreclose on the mortgage. The trial court granted summary judgment in favor of Hendricks County Bank, the McDonalds, and the Boutots. Because Alaska Seaboard's foreclosure action is barred by the doctrines of collateral and judicial estoppel, we conclude that the trial court did not err by granting summary judgment in favor of Hendricks County Bank, the McDonalds, and the Boutots and denying Alaska Seaboard's cross-motion for summary judgment. We further conclude that the trial court did not err by awarding attorney's fees to Hendricks County Bank, the McDonalds, and the Boutots. We therefore affirm the trial court.

1.  Hendricks County Bank and Trust Company informs us that MERS held the mortgage as the beneficiary of SN Servicing Corporation. Hendricks County Bank's Br. p. 6. Alaska Seaboard Partners Limited Partnership does not contest this fact in its reply brief.

### Facts and Procedural History

In 1996, Gerald Hood purchased real estate in Avon, Indiana. In 2005, Hood took out a $138,400 mortgage on that property from Wilmington Finance, a division of AIG Federal Savings Bank. Wilmington Finance assigned the mortgage to MorEquity, Inc., and MorEquity in turn assigned the mortgage to Saint Ivan Equity Management Corporation, a California corporation. The mortgage and assignments were each duly recorded. At some point during these assignments, Hood defaulted on the mortgage and eventually abandoned the property.

Five days before MorEquity assigned the Hood mortgage to Saint Ivan, Saint Ivan entered into a mortgage loan purchase agreement with SNGC, LLC, an Alaska limited liability company. The agreement provided that SNGC would pay over $3.5 million for the purchase of certain mortgages, and Saint Ivan would deliver the mortgages to SNGC by May 4, 2007. When Saint Ivan failed to deliver the mortgages, SNGC filed suit against Saint Ivan in Orange County, California. SNGC and Saint Ivan then reached a settlement agreement in which Saint Ivan was required to pay $279,000 and assign twenty-three mortgages, including the Hood mortgage, to SNGC on or before July 12, 2007. In accordance with this settlement agreement, on July 12, 2007, Saint Ivan assigned the Hood mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), who held the mortgage as the beneficiary of SN Servicing Corporation.[1] SN Servicing Corporation serviced the loan for SNGC.[2] This mort-

2.  The affidavit of William Fogleman, SN Servicing Corporation's corporate counsel, sheds some light on the transfer of the interest in the Hood mortgage at this juncture:

    2. This loan, including the Note and Mortgage, was initially acquired by SNGC, LLC pursuant to a Mortgage Loan Purchase

gage assignment was not recorded until October 22, 2007.

On September 7, 2007, less than two months after Saint Ivan assigned the Hood mortgage to MERS but before MERS recorded that assignment, Saint Ivan assigned the same mortgage to Hendricks County Bank and Trust Company. Hendricks County Bank paid Saint Ivan $107,600 in exchange. Hendricks County Bank also received from Hood a deed in lieu of foreclosure with regard to a second mortgage Hood had taken out on the Avon real estate and defaulted on. The deed in lieu of foreclosure stated that the Avon real estate was conveyed subject to the first mortgage. Hendricks County Bank recorded both Saint Ivan's mortgage assignment and Hood's deed in lieu of foreclosure on October 24, 2007, two days after MERS recorded its assignment from Saint Ivan. Hendricks County Bank eventually released both mortgages and sold the Avon real estate to Michael and Sheila McDonald, who later sold the real estate to Normand and Linda Boutot in 2009.

In the meantime, in November 2007, SNGC filed a second suit against Saint Ivan in Orange County, California, regarding four of the mortgages, including the Hood mortgage, that were to be assigned to SNGC pursuant to the agreement to settle the first suit SNGC had filed against Saint Ivan. With regard to the Hood mortgage, the second suit alleged: (1) breach of the settlement agreement because Saint Ivan extinguished the mortgage it purported to assign to SNGC when Saint Ivan

accepted $107,600 for the mortgage, (2) intentional misrepresentation because Saint Ivan misrepresented that it would assign the mortgage to SNGC when it knew it was going to accept payoff of the mortgage, (3) conversion because Saint Ivan received payoff of the mortgage after it had already assigned it to SNGC, (4) that SNGC was entitled to punitive damages for intentional misrepresentation and conversion, and (5) that Saint Ivan was liable for money had and received. The lawsuit requested $372,561.91 in damages for the payoff of three of the mortgages, including the Hood mortgage, $24,575.84 for attorney's fees and loss of profit with regard to the fourth mortgage, and punitive damages.

In January 2009, SNGC and Saint Ivan entered into a settlement agreement that required Saint Ivan to pay SNGC $430,000. The agreement included a clause requiring Saint Ivan to continue to cooperate with SNGC "to execute any and all documents necessary [to] transfer and/or assign" the mortgages as required under the agreement settling the first suit. Appellant's App. p. 210. In April 2009, the trial court entered a stipulated judgment based on this settlement agreement.

A few months later, on July 7, 2009, MERS assigned the Hood mortgage to Alaska Seaboard Partners Limited Partnership. SNGC and Alaska Seaboard are related companies. A few days later, MERS filed this lawsuit against Hood, Hendricks County Bank, the McDonalds, and the Boutots to foreclose on the Hood

and Sale Agreement from Saint Ivan Equity Management Corp. ("Saint Ivan"). Subsequently, the loan was transferred to Christiana Bank & Trust Company as Owner Trustee of the Security National Funding Trust and then to Alaska Seaboard. SN Servicing has been servicing this loan since its acquisition by SNGC.

3. When the loan was transferred by Saint Ivan, the Mortgage was assigned to Mortgage Electronic Registration Systems, Inc ("MERS") as nominee for the holder. MERS held the Mortgage as the beneficiary of the holder of the loan. MERS assigned the Mortgage to Alaska Seaboard on July 7, 2009.
Appellant's App. p. 262–63.

mortgage. Later that month, the MERS assignment to Alaska Seaboard was recorded. In November 2009, Alaska Seaboard was substituted as the plaintiff in the suit.

In June 2010, Hendricks County Bank moved for summary judgment. Among Hendricks County Bank's designations of evidence was: (1) SNGC's trial brief in its second suit against Saint Ivan asking for damages for breach of the first settlement agreement, intentional misrepresentation, and conversion and (2) the subsequent settlement agreement and stipulated judgment against Saint Ivan for $430,000. The McDonalds and the Boutots joined in Hendricks County Bank's motion later that month. Alaska Seaboard filed its response and a cross-motion for summary judgment in July 2010. Hendricks County Bank responded, and the McDonalds and the Boutots joined in the response.

After a hearing, the trial court granted the summary judgment motion of Hendricks County Bank, the McDonalds, and the Boutots and denied Alaska Seaboard's cross-motion for summary judgment. The trial court found that Hendricks County Bank, the McDonalds, and the Boutots were entitled to attorney's fees and ordered them to submit evidence of costs incurred. After receiving this joint tender of evidence, the trial court ordered Alaska Seaboard to pay $26,348.13 to Hendricks County Bank, $9,252.12 to the subrogee of the McDonalds, and $4,413.60 to the subrogee of the Boutots, with post-judgment interest.

Alaska Seaboard now appeals.[3]

**Discussion and Decision**

Alaska Seaboard contends that the trial court erred by granting summary judg-

ment in favor of Hendricks County Bank, the McDonalds, and the Boutots and denying its cross-motion for summary judgment for a host of reasons; however, we find one issue dispositive: whether Alaska Seaboard's foreclosure action is barred by the doctrines of collateral and judicial estoppel. We also address whether the trial court erred by awarding attorney's fees to Hendricks County Bank, the McDonalds, and the Boutots.

## I. Summary Judgment

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind.2007).

### A. Collateral Estoppel

Collateral estoppel bars subsequent litigation of a fact or issue which was adjudicated in previous litigation if the same fact or issue is presented in a subsequent lawsuit. *Fitz v. Rust–Oleum Corp.*, 883 N.E.2d 1177, 1182 (Ind.Ct.App.2008), *reh'g denied, trans. denied.* The former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id.* However, the former adjudication will be conclusive only as to those issues which were actually litigated and determined therein. *Id.* A two-part analysis determines whether collateral es-

---

3. Although Alaska Seaboard and Hendricks County Bank present us with arguments regarding Hendricks County Bank's November

24, 2010, motion to dismiss the appeal, our motions panel denied that motion on January 14, 2011, after briefing was completed.

toppel should be employed in a particular case: (1) whether the party against whom the former adjudication is asserted had a full and fair opportunity to litigate the issue and (2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel in the current action. *Id.* at 1182–83.

SNGC, Alaska Seaboard's related entity, filed a lawsuit against Saint Ivan alleging breach of the first settlement agreement, intentional misrepresentation, and conversion regarding the Hood mortgage and three other mortgages. With respect to the Hood mortgage, all of those claims boiled down to the theory that Saint Ivan improperly assigned the mortgage to Hendricks County Bank after it had already assigned it to SNGC and should not have received $107,600 from a mortgage it no longer owned. *See* Appellant's Br. p. 16 ("In the California litigation, SNGC argued that Saint Ivan could not assign the Hood Mortgage to Hendricks County Bank or accept the proceeds … because Saint Ivan had already assigned the mortgage to SNGC"). As a result of that lawsuit, SNGC received a $430,000 judgment against Saint Ivan for the Hood mortgage and the three other mortgages. SNGC has thus already litigated the issue of how it was damaged by Saint Ivan's reassigning of the Hood mortgage to Hendricks County Bank.

Alaska Seaboard nonetheless argues that collateral estoppel is inapplicable because the settlement agreement, which was the basis for the judgment, reserved its rights to the mortgage. Pointing to the clause requiring Saint Ivan to continue to cooperate with SNGC to execute all documents necessary to assign the mortgages as required under the agreement settling the first suit, Alaska Seaboard argues that SNGC received the $430,000 judgment and, at the same time, still maintained an interest in the Hood mortgage. *See* Appellant's Reply Br. p. 5 ("The parties specifically agreed that Saint Ivan's obligation to assign the mortgages was separate and apart from the stipulated judgment amount."). We disagree that this clause has any bearing on the issue before us. Because Saint Ivan had already assigned the Hood mortgage to MERS as the beneficiary of SN Servicing Corporation back in July 2007 in accordance with its first settlement with SNGC, the clause is meaningless with regard to the Hood mortgage.

Furthermore, SNGC's contention that Saint Ivan's obligation to assign the mortgage was separate and apart from the $430,000 judgment defies common sense. SNGC's second lawsuit requested $372,561.91 in damages for the payoff of three of the mortgages, including the Hood mortgage, $24,575.84 for attorney's fees and loss of profit with regard to the fourth mortgage, and punitive damages. SNGC received a judgment of $430,000. We cannot see any reason for this judgment if not for the damage caused by Saint Ivan's actions, including its assignment of the Hood mortgage to Hendricks County Bank after it had already assigned it to SNGC.

Alaska Seaboard also argues that collateral estoppel is inapplicable because the validity of Saint Ivan's assignment of the Hood mortgage to Hendricks County Bank was not decided in any lawsuit. This argument misses the mark. The relevant inquiry is whether SNGC had a full and fair opportunity to litigate the issue. SNGC's second lawsuit alleged breach of settlement agreement on grounds that its mortgage interest was extinguished when Saint Ivan accepted $107,600 from Hendricks County Bank for the same mortgage. It also alleged conversion on grounds that Saint Ivan received a payoff of the mortgage that SNGC rightfully owned. These claims deal directly with the validity of

Saint Ivan's assignment to Hendricks County Bank. SNGC settled the lawsuit and therefore had a full and fair opportunity to litigate the issue.

Moreover, instead of filing a lawsuit against Saint Ivan, SNGC could have filed a lawsuit arguing that Hendricks County Bank's mortgage interest was void because SNGC was the first to record. Because SNGC instead chose to pursue litigation against Saint Ivan and received a $430,000 judgment, allowing its related entity Alaska Seaboard to now argue that Hendricks County Bank's mortgage interest is void may impermissibly allow a double recovery.[4] In light of this consideration, it would not be otherwise unfair to permit the use of collateral estoppel here.

We conclude that Alaska Seaboard's foreclosure action is barred by collateral estoppel.

### B. Judicial Estoppel

■ Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *S & B Constr., LLC v. Old Fort, LLC*, 826 N.E.2d 32, 36 (Ind.Ct.App. 2005), *reh'g denied, trans. denied.* The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation. *Robson v. Tex. E. Corp.*, 833 N.E.2d 461, 466 (Ind.Ct.App.2005), *trans. denied.* While a party may properly plead alternative and contradictory theories, he may not repudiate by contrary assertions that which he has averred in his pleadings to be true. *Wells Fargo Ins., Inc. v. Land*, 932 N.E.2d 195, 198 (Ind.Ct.App.2010). There must have been a determination of

the prior action, or, at least, the allegations or admission must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel. *S & B Constr.*, 826 N.E.2d at 36–37. Judicial estoppel is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing "fast and loose" with the courts. *Robson*, 833 N.E.2d at 466. The primary purpose of judicial estoppel is not to protect litigants but to protect the integrity of the judiciary. *Id.* Judicial estoppel applies only to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel. *Id.*

■ SNGC's second California lawsuit alleged multiple claims against Saint Ivan for reassigning the Hood mortgage to Hendricks County Bank and receiving $107,600 in exchange despite having already assigned it to SNGC. SNGC settled the claims regarding the Hood mortgage and three other mortgages, and, based on that settlement, the trial court entered a stipulated judgment of $430,000, which included settlement of the demanded $107,600 Saint Ivan received from Hendricks County Bank. SNGC's related company Alaska Seaboard now pursues litigation in Indiana courts to resurrect its rights to the Hood mortgage.

■ Despite these facts, Alaska Seaboard argues that SNGC set forth alternate theories in the prior litigation and that the trial court's judgment does not indicate which theory prevailed. The undeniable fact, however, is that SNGC alleged that its mortgage interest was extinguished when Saint Ivan accepted money

---

4. Alaska Seaboard notes that neither it nor its related companies have received any money from Saint Ivan related to the Hood mortgage. *See* Appellant's Br. p. 7. Regardless of whether Alaska Seaboard or its related companies have received any monies, the relevant fact is that it did receive a judgment in the prior litigation.

from Hendricks County Bank. Now, after SNGC's settlement of that suit with Saint Ivan, Alaska Seaboard asserts the completely contrary position that its interest in the Hood mortgage remains intact. And it further claims that it cannot be determined which theory prevailed in the settlement of the prior suit. This is the sort of legal posturing precluded by judicial estoppel. Although it is true that a party may proffer inconsistent theories of recovery in a complaint without implicating judicial estoppel, *see Land,* 932 N.E.2d at 199 (where employer claimed that ex-employee was not entitled to receive any commissions during particular time period and claimed in the alternative that ex-employee was owed different amounts based on different interpretations of its commissions plan, employer was not judicially estopped from claiming on appeal that ex-employee was not entitled to receive any commissions), it may not do so in a subsequent lawsuit after settlement of claims where an inconsistent theory was averred. To allow Alaska Seaboard to do so would allow it to play fast and loose with the judicial system.

We conclude that Alaska Seaboard's foreclosure action is barred by judicial estoppel. The trial court therefore did not err by granting summary judgment in favor of Hendricks County Bank, the McDonalds, and the Boutots and denying Alaska Seaboard's cross-motion for summary judgment.

## II. Attorney's Fees

Alaska Seaboard next contends that the trial court erred by awarding attorney's fees to Hendricks County Bank, the McDonalds, and the Boutots.

The trial court awarded attorney's fees pursuant to Indiana Code section 34–52–1–1(b), which provides:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

The trial court concluded that Alaska Seaboard had brought an action that was unreasonable and groundless. The court explained, "The wholly inconsistent and contradictory arguments asserted by Alaska Seaboard and its affiliated entity, SNGC, in the California Lawsuit and this present lawsuit are evidence of the lack of rational argument supporting Alaska Seaboard's current theory of recovery on the Hood Mortgage." Appellant's App. p. 31.

We engage in a three-step process in reviewing an award of attorney's fees under Section 34–52–1–1. *Estate of Collins v. McKinney,* 936 N.E.2d 252, 263 (Ind.Ct.App.2010), *trans. denied.* We review the trial court's findings of fact for clear error, neither reweighing evidence nor assessing witness credibility, but instead reviewing only evidence favoring the judgment and the reasonable inferences drawn accordingly, and reversing only when we are left with a definite and firm conviction that a mistake has been made. *Id.* at 263–64. We then review de novo the trial court's legal conclusions on whether the claim or defense is frivolous, groundless, unreasonable, or asserted in bad faith. *Id.* at 264. A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. *Chapo v. Jefferson Cnty. Plan*

*Comm'n,* 926 N.E.2d 504, 510 (Ind.Ct.App. 2010). A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id.* Finally, we look to see whether the trial court's decision to award fees and the amount of the fees awarded constitute an abuse of discretion. *Estate of Collins,* 936 N.E.2d at 264.

The trial court's findings of fact include the finding that SNGC successfully obtained a stipulated judgment against Saint Ivan in the amount of $430,000, which included settlement of the demanded $107,600 Saint Ivan received from Hendricks County Bank for the Hood mortgage. *See* Appellant's App. p. 16–17 (Finding of Fact No. 38). We find no clear error in this finding.

When awarding attorney's fees, the trial court concluded that Alaska Seaboard's action was both unreasonable and groundless. We agree with the trial court's legal conclusion. Because SNGC had already obtained a judgment against Saint Ivan in the amount of $430,000, which included damages for Saint Ivan's reassignment of the Hood mortgage to Hendricks County Bank, Alaska Seaboard's claim to the Hood mortgage was unreasonable and groundless.

Based on the foregoing, the trial court's decision to award attorney's fees does not constitute an abuse of discretion. Alaska Seaboard does not contest the amount of the fees awarded.

Affirmed.

BAKER, J., and BARNES, J., concur.