# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MICHAEL G. SMITH**
Kahn, Dees, Donovan & Kahn, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES J. SHEA, SR.**
**DANIEL J. PALMER**
**ANDREW S. WILLIAMS**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY a/s/o KENNETH BURKHART, | ) ) ) ) | |
| Appellant/Plaintiff, | ) ) | |
| vs. | ) ) | No. 35A02-1307-CT-638 |
| H. H. NISWANDER, | ) ) | |
| Appellee/Defendant. | ) ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1012-CT-1326

**April 9, 2014**

**OPINION - FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

State Farm appeals the trial court's award of attorney's fees against it for filing a groundless lawsuit. Before the filing of its complaint against H.H. Niswander, State Farm received a report from its experts about the cause and origin of the fire involved in this case. There was no evidence in the report that H.H. Niswander was negligent or caused the fire. For two-and-a-half years, State Farm continued to litigate its claim against H.H. Niswander requiring it to incur attorney's fees. Even after State Farm's expert at a deposition testified that H.H. Niswander was not at fault, State Farm refused to dismiss the claim until the court dismissed it. We affirm the trial court's dismissal and award of attorney's fees to H.H. Niswander.

**Facts and Procedural History**

In January 2010 Kenneth Burkhart drove his 2006 GMC truck and parked it in his attached garage. After a short period of time, he noticed smoke emanating from his garage. He went into the garage and noticed that flames were coming from under the hood. The fire spread and eventually engulfed the garage, destroying its contents, three other cars, and a portion of his house.

According to Burkhart, the last people to enter the engine compartment were employees of H.H. Niswander, a dealership that had performed an oil change on his truck about one week before the fire.[1]

---

[1] The record does not contain a specific date for the oil change. In an answer to one of H.H. Niswander's interrogatories, State Farm claims that the oil change occurred approximately five days before the incident. Appellant's App. p. 18. However, in its brief, it states that the oil change occurred approximately one week before the incident. Appellant's Br. p. 3.

Approximately two weeks after the accident, Timothy Herndon and Walter Herndon, employed by Herndon & Associates, investigated and determined the cause of the fire. After going to Burkhart's house twice and performing a thorough investigation, they prepared a cause-and-origin report. The report concluded in February 2010, ten months before State Farm filed its complaint against H.H. Niswander, that:

> Having completed an examination of the vehicle, reviewed an interview obtained from the insured who was an eyewitness to the fire, conducted research pertaining to the vehicle in question, reviewed the investigation with Master Mechanic Edward Nightingale of this office and based upon all of the information known at the time of the preparation of this report, it is the opinion of this Investigator that the fire was an accidental combustible fluid fire. It is further the opinion of this Investigator that the fire originated in the ignition [as a result] of oil leaking from the valve cover/gasket on the right or passenger's side engine onto hot surfaces of the manifold and upon ignition the fire extended upward and outward from that location causing the damage present. The fire is classified as an accidental fire.

Appellee's App. p. 41.

After Burkhart filed a claim with State Farm, he assigned and transferred his right to pursue recovery against H.H. Niswander to State Farm. State Farm filed a complaint against H.H. Niswander in December 2010 alleging that it was "negligent, reckless, and careless in service, thereby causing the [fire]." *Id.* at 2. State Farm also alleged that Burkhart's property was damaged due to H.H. Niswander's negligence.

The lawsuit was actively litigated from December 2010 until April 2013. Three hearings were held, H.H. Niswander filed two motions to compel discovery, two sets of trial dates were entered and continued, and the parties filed preliminary and final witness and exhibit lists. The parties also participated in written discovery. In an answer to one of H.H. Niswander's interrogatories in August 2011, State Farm wrote:

Representatives of Herndon & Associates will testify as to the cause and origin of the fire including the fact that oil leakage and fluid buildup caused the fire. The leakage and fluid buildup was visible to any competent mechanic during the routine maintenance that Defendant undertook on the vehicle approximately five (5) days prior to the incident.

*Id.* at 18. In another response to one of H.H. Niswander's interrogatories, State Farm stated that "Defendant was negligent in failing to recognize the fluid buildup and cause of the fluid leakage. Defendant may have contributed to the cause of the fluid buildup by negligently servicing the vehicle." *Id.* at 21.

Although originally prepared in February 2010, State Farm sent H.H. Niswander the cause-and-origin report prepared by Herndon & Associates, which claimed that the fire was accidental, in December 2011.[2]

After receiving the cause-and-origin report in discovery, H.H. Niswander scheduled a deposition of State Farm's experts, Edward Nightengale and Timothy Herndon, in Livonia, Michigan. Timothy testified on March 7, 2012 as follows:

| H.H. Niswander: | And my question for you is my client is H.H. Niswander, an auto dealership and repair facility, do you have any opinion with regard to whether anything that my client did caused or led to causing the fire of January 14, 2010? |
| --- | --- |
| A: | I do not believe that the oil change in question had anything to do with the fire in question. |
| H.H. Niswander: | Do you believe that anything that my client did caused or led to the cause of the fire on January 14, 2010? |
| A: | I do not. |

---

[2] State Farm claims that it gave the report to H.H. Niswander in August 2011. Appellant's Br. p. 4. However, State Farm does not include the report in its appendix and H.H. Niswander places the report in its appendix after a letter asking H.H. Niswander to find "supplemental discovery responses" attached. Appellee's App. p. 32.

4

\*      \*      \*      \*      \*

| | |
|---|---|
| State Farm: | What is your opinion as to the cause of the fire? |
| A: | My opinion is that it was an accidental fire originating in the engine compartment of the vehicle in question where I found evidence of oil leakage from the valve cover having run down onto the exhaust system that caused the fire.<br><br>We took it a step further, had our master mechanic remove the valve cover itself and confirm that oil was, in fact, bypassing the gasket. |
| State Farm: | So when you say that, would that be a manufacturing defect? |
| A: | It would. |
| State Farm: | And that was the ultimate cause of the fire? |
| A: | That's correct. |

*Id.* at 47-48.

After the deposition, H.H. Niswander sent a letter to State Farm on May 24, 2012 asking State Farm to dismiss its lawsuit with prejudice and to send a check for $8,904.57, which represented the amount H.H. Niswander had spent in legal fees defending the suit. *Id.* at 51. H.H. Niswander sent an email requesting the same but did not receive a response. According to H.H. Niswander, State Farm later informed H.H. Niswander's counsel in a phone conversation that it was unwilling to pay H.H. Niswander's legal fees. *Id.* at 7.

In December 2012 H.H. Niswander filed a motion to dismiss the lawsuit. *Id.* at 5. The motion also asked the court to impose sanctions and fees upon State Farm. H.H. Niswander also submitted invoices showing legal bills and expenses of $12,503.39. *Id.* at 53-78. In April 2013 the court held a hearing on the motion. At the hearing State Farm's

5

attorney argued that although both parties had a copy of the investigation report by Herndon & Associates, the cause-and-origin investigator believed that "H.H. Niswander was a . . . dealership and therefore there was some liability that [GMC] would have." Tr. p. 7. State Farm's claim against H.H. Niswander was dismissed with prejudice and the court took the issue of sanctions and fees under advisement. *Id.* at 10.

After the hearing, the trial court issued an order requiring State Farm to pay H.H. Niswander's attorneys $12,503.39 within sixty days. In its order, the trial court explained that "[i]t appears clear to the Court that [State Farm] knew, prior to filing of this suit, that [State Farm's] experts were of the opinion that [H.H. Niswander] did not cause the fire." Appellant's App. p. 5. State Farm then filed a motion to correct error, which was denied. *Id.* at 9-13.

State Farm now appeals.

**Discussion and Decision**

State Farm argues that the trial court erred in awarding attorney's fees to H.H. Niswander. Typically, litigants in Indiana are required to pay their own attorney's fees unless there is an agreement between the parties, statutory authority, or some other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied*. Indiana Code section 34-52-1-1(b) provides for the recovery of attorney's fees for bringing or continuing frivolous lawsuits:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

6

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

The trial court concluded that "[State Farm] knew, prior to filing of this suit, that [State Farm's] experts were of the opinion that [H.H. Niswander] did not cause the fire." Appellant's App. p. 5.

When reviewing an award of attorney's fees under Section 34-52-1-1, we engage in a three-step process. *Alaska Seaboard Partners Ltd. P'ship v. Hood*, 949 N.E.2d 1247, 1255 (Ind. Ct. App. 2011). First, we review the trial court's findings of fact for clear error. In doing so, we may not reweigh the evidence or assess the credibility of witnesses. *Id.* We must review only the evidence favoring the judgment and the reasonable inferences drawn therefrom. *Id.* We will only reverse the trial court's decision "when we are left with a definite and firm conviction that a mistake has been made." *Id.* Second, we review de novo the trial court's legal conclusion that a lawsuit is "frivolous, groundless, unreasonable, or asserted in bad faith." *Id.* Third, "we look to see whether the trial court's decision to award fees and the amount of the fees awarded constitute an abuse of discretion." *Id.* at 1256.

The trial court determined in its order that "[State Farm] knew, prior to filing of this suit, that [State Farm's] experts were of the opinion that [H.H. Niswander] did not cause the fire." Appellant's App. p. 5. The cause-and-origin report produced by Herndon & Associates stated that the fire was caused because oil leaked from the valve system into the exhaust manifold and that it was accidental. Appellee's App. p. 41. It was dated February 2010, ten months before State Farm filed its lawsuit against H.H. Niswander. *Id.* Even if

7

State Farm believed the experts' report was ambiguous, it should have asked its experts for clarification before engaging in extensive litigation.[3] There was no evidence in the cause-and-origin report that H.H. Niswander was negligent or that the oil change performed by H.H. Niswander caused the fire. Moreover, our review indicates that there was no evidence supporting State Farm's allegations that H.H. Niswander was negligent or caused the fire. Despite this lack of evidence, State Farm pursued the case.

Next, we must review de novo the trial court's determination that State Farm's claim was frivolous, groundless, unreasonable, or asserted in bad faith. Although the trial court did not state in its order that the lawsuit was frivolous, groundless, unreasonable, or in bad faith, H.H. Niswander characterizes State Farm's claim as "groundless." Appellant's Br. p. 6. "A claim is 'groundless' only if no facts exist which support a legal claim presented by the losing party." *Gillock v. City of New Castle*, 999 N.E.2d 1043, 1046 (Ind. Ct. App. 2013). State Farm's claim was one that required expert testimony to confirm the cause and origin of the fire. Ten months before State Farm filed its lawsuit, experts retained by State Farm drafted a report that showed no facts would support a claim of negligence against H.H. Niswander. Nevertheless, State Farm filed the lawsuit and litigated it for more than two years it had in its possession a report ten months before filing the lawsuit that classified

---

[3] State Farm argues that the experts' report was ambiguous because the cause-and-origin investigator believed that "H.H. Niswander was a . . . dealership and therefore there was some liability that [GMC] would have." Tr. p. 7. However, in its initial complaint, State Farm made no claim against H.H. Niswander for a breach of warranty. Moreover, it does not raise this argument in its original brief and only mentions it in its reply brief. Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."); *see also Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n.6 (Ind. 2001) ("Because he raised this issue for the first time in his reply brief, it is waived.").

the fire as accidental and no other evidence that H.H. Niswander was negligent or caused the fire.

Finally, we must determine whether the trial court abused its discretion in awarding attorney's fees to H.H. Niswander.[4] As we stated previously, State Farm knew that its claim was groundless approximately ten months before it filed suit against H.H. Niswander. Despite this knowledge, State Farm filed its lawsuit anyway. From December 2010 until April 2013, State Farm engaged in litigation that included written discovery, three hearings, two motions to compel discovery (filed against State Farm), expert discovery, and an exchange of preliminary and final witness lists. In response to written discovery, State Farm stated that its experts would testify that the fire was caused by oil leakage and fluid build-up to which H.H. Niswander contributed by negligently servicing the truck. Appellee's App. p. 21. Only after H.H. Niswander's counsel had prepared for the deposition of State Farm's experts and traveled to Michigan did State Farm concede that the experts did not blame H.H. Niswander for the fire. Tr. p. 6. And then State Farm did not file a motion to dismiss the lawsuit; rather, it allowed the suit to proceed until the trial court dismissed it. Appellee's App. p. 7; Appellant's App. p. 5. Based on these facts, we cannot say that the trial court abused its discretion in awarding attorney's fees to H.H. Niswander.

Based on our standard of review, we cannot find with a definite and firm conviction that the trial court made a mistake in determining that State Farm pursued the lawsuit against H.H. Niswander without evidence that H.H. Niswander was negligent or caused

---

[4] State Farm only contests the trial court's decision to award fees and does not contest the amount of fees awarded.

9

the fire. We find that State Farm's lawsuit was groundless and that the trial court did not abuse its discretion in awarding H.H. Niswander attorney's fees. Therefore, H.H. Niswander is entitled to the attorney's fees and expenses it incurred—$12,503.39 in total—in litigating this case.

Affirmed.

RILEY, J., and MAY, J., concur.